**WILLIAM BROTHERS, INC.,**
**Petitioner,**

v.

**Johnie PATE and the Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 86–7564.

United States Court of Appeals, Eleventh Circuit.

Dec. 1, 1987.

Loomis, Owen, Fellman & Howe, William H. Howe, Richard B. Fellows, Jr., Washington, D.C., for petitioner.

Robinson & Nelson, Philip P. Nelson, Jasper, Ala., Sylvia T. Kaser, U.S. Dept. of Labor, Thomas L. Holzman, Director, Benefits Review Board, U.S. Department of Labor, Washington, D.C., for respondents.

Before TJOFLAT and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

ANDERSON, Circuit Judge:

This case involves a claim under the Black Lung Benefits Act ("Act"), 30 U.S.C. §§ 901–932. William Brothers, Inc. appeals from the determination of the Benefits Review Board ("Board") that it is the responsible operator liable for payment of black lung benefits to respondent Johnie Pate. We reverse the Board's determination since Pate's work as a construction worker with William Brothers did not, under these particular circumstances, bring him within the statutory definition of a miner.

## I. FACTS

Johnie Pate worked as a construction worker for William Brothers for approximately one and one-half years. Before coming to work for William Brothers, Pate worked as a coal miner for nineteen years. William Brothers is a construction company involved in general industrial construction, including construction of surface facilities for coal mine companies. No underground work, such as excavating mine shafts, is done by William Brothers employees. As a William Brothers employee, Pate was involved in one surface construction project at an Alabama coal mine. During this time, that mine was under construction and was not in operation. Pate did not work in the vicinity of an operational mine.

In 1979, Pate filed a claim for black lung benefits under the Act with the United States Department of Labor ("Department"). The Department initially found that Pate was entitled to benefits and that William Brothers was responsible for payment of these benefits. William Brothers contested these findings, but the Department affirmed its initial decision. William Brothers then requested a hearing before an Administrative Law Judge ("ALJ").

A hearing was held before an ALJ in 1983. The ALJ's decision affirmed the Department's award of benefits to Pate, but dismissed William Brothers as the responsible operator. The dismissal was based on the ALJ's finding that Pate's employment with William Brothers did not bring him under the Act's definition of a miner. The ALJ specifically found that Pate was not exposed to coal dust in the course of his employment, but that he was regularly exposed to rock dust generated by his construction work.

At that hearing, William Brothers took the position that Pate could not have been a miner within the meaning of the Act if he was not exposed to coal dust. Conversely, the Director argued a broad definition of miner which was based on exposure to "coal mine dust." The Director urged the ALJ to find that "coal mine dust" included *any* dust on coal mine property. The ALJ agreed that exposure to *"coal mine* dust" was the appropriate test for determining whether a construction worker would be considered a miner. However, the ALJ rejected the Director's interpretation of "coal mine dust" as overly broad. Reasoning that "coal mine dust" includes, in addition to "coal dust," any dust which occurs during the actual extraction or preparation of coal, the ALJ concluded that Pate's work had not exposed him to "coal mine dust" since the mine had not been operational. Thus, Pate had not worked as a miner for William Brothers and therefore William

Brothers would not be liable for payment of benefits to Pate.

On appeal, the Board reversed the ALJ's dismissal of William Brothers. The Board rejected the ALJ's conclusion that the kind of dust to which Pate was exposed did not constitute "coal mine dust." In effect, the Board agreed with the Director that exposure to any kind of dust at a coal mine site would qualify a construction worker as a miner. William Brothers appealed the decision directly to this court.

## II.  COAL DUST IS THE EQUIVALENT OF "COAL MINE DUST"

The relevant statute in this case, 30 U.S. C. § 902, permits the award of black lung benefits to those individuals who have worked as a "miner," including those who have engaged solely in construction work. The statute provides, in relevant part:

> The term "miner" means any individual who works or has worked in or around a coal mine or coal preparation facility in the extraction or preparation of coal. Such term also includes an individual who works or has worked in coal mine construction or transportation in or around a coal mine, to the extent such individual was exposed to *coal dust* as a result of such employment.

30 U.S.C. § 902(d) (emphasis added).

The interpretative regulation is substantially the same, except for its use of the term "coal mine dust":

> A coal mine construction or transportation worker shall be considered a miner to the extent such individual is or was exposed to *coal mine dust* as a result of employment in or around a coal mine or coal preparation facility.

20 C.F.R. § 725.202(a) (emphasis added). This regulation goes on to establish a rebuttable presumption that a coal mine construction worker has been exposed to "coal mine dust." 20 C.F.R. § 725.202(a).

■ The Director argues that coal dust and "coal mine dust" are functionally equivalent and that exposing workers to either could result in liability for a company. We agree. Deference is due the regulation which refers to "coal mine dust," and, furthermore, the legislative history of the Federal Coal Mine Safety & Health Act of 1969, 30 U.S.C. § 801, *et seq.*, indicates that Congress ·used the terms "coal dust" and "coal mine dust" interchangeably. *See, e.g.,* 115 Cong.Rec. 31,936 (1969) (report entitled "Studies on the Control of Respirable Coal Mine Dust by Ventilation" placed in record by Rep. Hechler of West Virginia); 115 Cong.Rec. 32,015–32,019 (1969) (report of Spindletop Research Group which was placed in record by Rep. Dent of West Virginia). In holding that exposure to "coal mine dust" is the appropriate test, we follow the Third Circuit's well-reasoned and well-researched opinion in *Williamson Shaft Contracting Co. v. Phillips,* 794 F.2d 865 (3d Cir.1986). There, the court upheld the validity of the regulation which refers to "coal mine dust" and found it consistent with congressional intent.

However, our inquiry does not stop at this point. The Director urges upon us a broad interpretation of "coal mine dust" as including any dust at a coal mine site. Before addressing the proper meaning of "coal mine dust," we must first address the issue of whether this court should give deference to any administrative entity which has interpreted the term.

## III.  DEFERENCE ISSUE

■ It is settled law that the Board is entitled to no deference from an appellate court with regard to the Board's reading of regulations. *Potomac Electric Power Co. (PEPCO) v. Director, OWCP,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). The Board is a quasi-judicial body which is empowered to resolve legal issues, but not to engage in overall administration through rule-making. *Ryan–Walsh Stevedoring Co. v. Trainer,* 601 F.2d 1306, 1314 n. 7 (5th Cir.1979).[1] The *PEPCO* court made clear that the Board is not a policymaking agen-

---

1. This case was decided prior to the close of business on September 30, 1981, and is binding precedent under *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

cy. *PEPCO*, 449 U.S. at 278 n. 18, 101 S.Ct. at 514 n. 18. To the extent the Board adopts new interpretations of the statute, as it has done here, this court can give plenary review to the decision of the Board. *Carozza v. U.S. Steel Corp.*, 727 F.2d 74, 77 (3d Cir.1984).

The Director agrees that the Board is entitled to no deference in this case. However, the Director argues that the Secretary's views are entitled to deference from this court. While it is obviously true that deference would be due any implementing regulations promulgated by the Secretary, we see no expression of policy by the Secretary in this case to which deference would be appropriate.[2] In response, the Director urges us to find that the position which he has taken in this appeal, i.e., that "coal mine dust" is synonymous with "any dust," constitutes such an expression of policy since it represents the Secretary's views.

Even assuming *arguendo* that the Director's interpretations as well as those of the Secretary are examples of agency construction which are entitled to deference, we do not agree that the Director's mere litigating position is due to be given deference. Common sense tells us that if deference were always to be given to the Director's litigating position, then claimants would be effectively denied the right to appellate review. Furthermore, the Supreme Court has on a number of occasions proscribed granting deference to a litigating position:

> "The courts may not accept appellate counsel's *post hoc* rationalizations for agency action.... For the courts to substitute their or counsel's discretion for that of the [agency] is incompatible with the orderly functioning of the process of judicial review." ... Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands. It is the administrative offi-

cial and not appellate counsel who possesses the expertise that can enlighten and rationalize the search for the meaning and intent of Congress.

*Investment Co. Institute v. Camp*, 401 U.S. 617, 627–28, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971) (citing *Burlington Truck Lines v. United States*, 371 U.S. 156, 168–69, 83 S.Ct. 239, 246, 9 L.Ed.2d 207 (1962)). This court is not bound to defer to the Director's view in this case. If the Secretary has a position he wishes to express, he can do it through the proper forum, i.e., the implementation of new, clarifying regulations. Thus, we find without merit the Director's argument that his novel position is entitled to deference. We further note that the Director has seen fit to adopt a contradictory position on related issues when to do so furthers the chances of success in litigation. *See, e.g., Foreman v. Director, Office of Workers' Compensation Programs*, 794 F.2d 569 (11th Cir. 1986) (where the Director argued for a very restrictive definition of the term "miner" as opposed to the broad reading which it gives the term "miner" in the case at bar). Thus, even if deference ought to be given, we would not be inclined to defer to an inconsistent position.

### IV. MEANING OF "COAL MINE DUST"

Having concluded that there is no administrative interpretation of "coal mine dust" to which we can appropriately defer, we are left to a plenary review of the issue. The Director argues that *Williamson Shaft Contracting Co. v. Phillips*, 794 F.2d 865 (3d Cir.1986), interprets the term in the broad manner urged by the Director. However, we read *Williamson* to have addressed only the validity of the regulation referring to "coal mine dust." That opinion did not address the scope and meaning of the term. Rather, it merely assumed that the claimant there was exposed to "coal mine dust" and, as discussed below, the facts there suggest that the claimant

---

2. The relevant regulation in this case—20 C.F.R. § 725 202(a)—makes reference to "coal mine dust" without defining that term. Thus, the regulation itself does not answer the central question in this case, i.e., what is "coal mine dust?", and, therefore, there is no basis for granting deference.

was in fact exposed to "coal mine dust" as that term is defined in this opinion.

■■■■ Our reading of the Black Lung Benefits Reform Act persuades us to reject as overbroad the Director's attempt to include as part of "coal mine dust" any dust at a coal mine site. Congress wished to provide coverage for coal mine construction workers to the extent that they worked in conditions substantially similar to conditions in which miners work. *See William-son Shaft Contracting Co. v. Phillips*, 794 F.2d at 868; S.Rep. No. 95–209, 95th Cong., 1st Sess. 1977, *reprinted in* Committee on Education and Labor, House of Rep., 96th Cong., Black Lung Benefits Reform Act and Black Lung Revenue Act of 1977 at 624 (1979). Since miners are covered by the Act if they have worked "in the extraction or preparation of coal," 30 U.S.C. § 902(d), we believe that construction workers are covered only if they have been exposed to dust arising from the extraction or preparation of coal.[3] This conclusion is consistent with the decisions of the Board in *Ritchey v. Blair Electric Service Co.*, 6 Black Lung Rep. 1–966 (1984), and *Harriger v. B & G Construction Co.*, 4 Black Lung Rep. 1–542 (1982), *aff'd*, 760 F.2d 255 (3d Cir.1985). In both of these cases, the Board defined "coal mine dust" as dust generated by the extraction or preparation of coal.[4] *See also Foreman v. Director, Office of Workers' Compensation*, 794 F.2d at 570 (noting that to be a qualifying miner under the Act, a worker must perform duties related to the extraction and preparation of coal).

Turning to the facts of this case, it is undisputed that Pate worked at a new mine site where the mine was not yet operable and that he did not work in the vicinity of the only mine that was operable. Nor did Pate work underground or excavate any coal in the process of doing his job. Thus, there was no dust generated by the extrac-

tion or preparation of coal to which Pate could have been exposed. In contrast, in the *Williamson* case, where the claimant's exposure to "coal mine dust" was assumed, the claimant had participated in three phases of coal mine construction: first, like Pate, he prepared the surface area; second, unlike Pate, he excavated the shaft down to the desired coal seam and removed small amounts of coal; third, also unlike Pate, he worked underground in the mine excavating coal so that the mining company would have sufficient space to begin mining operations. *Williamson*, 794 F.2d at 866. On the narrow facts of the case at bar, we hold that Pate could not have been exposed to "coal mine dust" during his tenure with William Brothers. *See Tressler v. Allen & Garcia Co.*, 8 Black Lung Rep. 1–365 (1985) (holding that there was no "coal mine dust" exposure during periods when claimant worked at non-operable mines). Therefore, Pate did not qualify as a "miner" within the meaning of the Act during his employment with William Brothers. The ALJ properly held that Pate had successfully rebutted the presumption that he, as a coal mine construction worker, had been exposed to "coal mine dust." The ALJ properly dismissed William Brothers as the "responsible operator" who is liable for payment of black lung benefits to Pate.

We find that the ALJ's decision was based on a proper reading of the relevant statute and regulations and that it is supported by substantial evidence in the record. The Board is required to uphold the ALJ's decision if it is in accordance with law and is supported by substantial evidence from the entire record. *See* 33 U.S.C. § 921(b)(3) (1982); 20 C.F.R. § 802.301 (1986); *Stomps v. Director, Office of Workers' Compensation Programs*, 816 F.2d 1533 (11th Cir.1987). Thus, the Board erred in not upholding the ALJ's decision. The Petition for Review will be

---

**3.** As the ALJ noted, such dust is not limited to dust from the substance, coal, but includes all dust from any substance generated during the extraction or preparation of coal.

**4.** In this case, as support for its overbroad interpretation, the Board relied upon a footnote in

*George v. Williamson Shaft Contracting Co.*, 8 Black Lung Rep. 1–91 (1985). However, the *George* footnote constitutes an unexplained departure from the cases cited above in text. We do not find the *George* footnote persuasive.

granted and the case remanded to the Board with instructions to reinstate the judgment of the ALJ dismissing William Brothers as the "responsible operator."

PETITION for review GRANTED.