**BRIDGER COAL COMPANY/PACIFIC MINERALS, INC., Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

Nos. 89–9564, 90–9520.

United States Court of Appeals, Tenth Circuit.

March 13, 1991.

Lawrence G. McBride, Freedman, Levy, Kroll & Simonds, Washington, D.C., for petitioner.

Michael J. Denney, Counsel for Appellate Litigation, (Robert P. Davis, Solicitor of Labor, Donald S. Shire, Associate Solicitor, and Paul L. Frieden, Attorney, with him on the brief), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before MOORE, TACHA, and EBEL, Circuit Judges.

TACHA, Circuit Judge.

Petitioner Bridger Coal Company/Pacific Minerals, Inc. (Bridger) seeks review of a decision of the United States Department of Labor Benefits Review Board (the Board). The Board upheld the ruling of an Administrative Law Judge (ALJ) designating Bridger the responsible operator liable for payment of a claim brought by the widow of the claimant, Glenn Harrop, pursuant to Title IV of the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 901 *et seq.* (Black Lung Benefits Act or Act). On appeal, Bridger argues the Board's interpretation of the relevant regulation is overly broad. We exercise juris-diction under 30 U.S.C. § 932(a) and 33 U.S.C. § 921(c) and reverse.

Glenn Harrop was employed by various surface coal mine operators from 1948 until 1975. He was employed by Bridger at the company's Jim Bridger Mine in Rock Spring, Wyoming as a coal mine construction worker from November 16, 1973 until February 3, 1975. That mine did not become commercially operational until the summer of 1974.

From November 1973 until March 6, 1974, Harrop's responsibilities as a coal mine construction worker included observation of the erection of the Page 732 dragline, installation of large doors on the erection site shop, installation of insulation in that shop, and placement of cables on the dragline reel skids. The equipment with which Harrop worked was not laden with dust. For a few weeks during this time, Harrop operated a bulldozer for one half-hour a day removing overburden and clearing roads. Between January and March 1974, some outcrop coal was uncovered by operators working with scrapers and bulldozers. However, there is no evidence indicating Harrop was exposed to dust arising from this outcrop coal.

On March 6, 1974, testing began on the Page 732 dragline. This testing involved walking the machine and then operating it for overburden removal. Mechanical difficulties with the dragline delayed the start-up of daily digging of overburden until April 27, 1974. Harrop continued to operate the Page 732 dragline until November 1974, removing approximately fifteen to eighty-five feet of overburden. He then began operating the Marion 8200 dragline, which was erected and started in operation after the Page 732 dragline began service. Harrop was terminated on February 3, 1975.

Harrop filed for federal black lung benefits in July 1978. On October 4, 1979, the Department of Labor issued an initial finding of entitlement, designating Bridger as the responsible operator. Bridger filed a motion requesting dismissal as the designated responsible operator. The motion was denied.

Harrop died of emphysema on May 17, 1984. On July 31, 1984, the Department of Labor determined Harrop's surviving widow, Mary Harrop, satisfied the conditions for derivative entitlement as a survivor.

Following a formal hearing, an ALJ issued a Decision and Order Awarding Benefits. Bridger filed a timely appeal with the Benefits Review Board. On October 31, 1989, the Board affirmed the ALJ's decision and refused to dismiss Bridger as the responsible operator. Bridger filed a motion for reconsideration on November 30, 1989, but then filed a request to withdraw this motion on December 2, 1989. Before the Board acted on the request, Bridger filed a petition for review with this court, appeal no. 89–9564. On March 29, 1990, the Board granted Bridger's request to withdraw its motion for reconsideration.

The Director of the Office of Workers' Compensation Programs (OWCP) filed a motion to dismiss appeal no. 89–9564 for lack of jurisdiction. OWCP argues the filing of the motion for reconsideration tolled the time for filing a petition for review and thus appeal no. 89–9564 was filed prematurely. Bridger opposed this motion and filed a second petition for review on April 13, 1990, appeal no. 90–9520.

■ A motion for reconsideration renders the underlying Board decision nonfinal and thus precludes judicial review of that action. *See* 20 C.F.R. § 802.406. A motion for reconsideration tolls the period for filing a notice of appeal until the Board grants the request to withdraw that motion. *See Tideland Welding Serv. v. Sawyer*, 881 F.2d 157, 160 (5th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1922, 109 L.Ed.2d 286 (1990). We reject Bridger's argument that a Board decision becomes final when a party requests its motion for reconsideration be withdrawn. Allowing a party's abandonment of its motion to nullify its tolling effect unfairly requires the party opposing that motion to guess, at its peril, whether it can rely on the motion for reconsideration to toll its own appeals period. *See id.* Because the notice of appeal for appeal no. 89–9564 was filed premature-

ly before the Board decision was final, we do not have jurisdiction over that appeal.

Bridger is not prejudiced by this dismissal. A final order of the Board may be reviewed by a circuit court if the appeal is filed within sixty days of that decision. 33 U.S.C. § 921(c). Appeal no. 90–9520, which involves the same issues raised in appeal no. 89–9564, was filed within sixty days of the Board's final action—the issuance of an order granting Bridger's request to withdraw its motion for reconsideration. We therefore have jurisdiction over appeal no. 90–9520.

The Black Lung Benefits Act imposes liability on coal mine operators for the payment of benefits for a miner's death or total disability caused by pneumoconiosis arising at least in part out of employment in a mine after December 31, 1969. 30 U.S.C. § 932(c). Although the Act does not include a standard for determining whether an operator is responsible for benefits to a miner, Congress delegated broad authority to the Secretary of Labor to facilitate the payment of benefits under the Act. *See* 30 U.S.C. §§ 932(a), 936(a). Based on this authority, the Secretary has defined the responsible operator as the "operator or other employer with which the miner had the most recent periods of cumulative employment [as a miner] of not less than 1 year." 20 C.F.R. § 725.493(a)(1).

■ As originally enacted, the Black Lung Benefits Act defined "miner" as an individual who works in a coal mine facility in the extraction or preparation of coal. In 1977, the Act was amended to expand the definition of miner to include coal mine construction workers when they are "exposed to coal dust as a result of such employment." 30 U.S.C. § 902(d). According to the Department of Labor:

A coal mine construction or transportation worker shall be considered a miner to the extent such individual is or was exposed to coal mine dust as a result of employment in or around a coal mine or coal preparation facility. In the case of an individual employed in coal transportation or coal mine construction, there shall be a rebuttable presumption that

such individual was exposed to coal mine dust during all periods of such employment occurring in or around a coal mine or coal preparation facility....

20 C.F.R. § 725.202(a). This presumption may be rebutted by evidence demonstrating the "individual was not regularly exposed to coal mine dust during his or her employment in or around a coal mine or preparation facility." 20 C.F.R. § 725.202(a)(1)(i).

We note 30 U.S.C. § 902(d) refers to exposure to "coal dust," while the interpretive regulation, 20 C.F.R. § 725.202(a), refers to exposure to "coal mine dust." Despite the difference in word choice, the regulation has been upheld as consistent with congressional intent. *See Williams Bros., Inc. v. Pate,* 833 F.2d 261, 264 (11th Cir.1987); *Williamson Shaft Contracting Co. v. Phillips,* 794 F.2d 865, 868–70 (3d Cir.1986). The legislative history of the Federal Coal Mine Safety and Health Act of 1969, 30 U.S.C. § 801 *et seq.,* reveals "Congress used the terms 'coal dust' and 'coal mine dust' interchangeably." *Pate,* 833 F.2d at 264.

In the present case, Bridger asserts it cannot be the responsible operator under the regulations because Harrop was not employed by the company as a miner for the required period of one year. Specifically, Bridger argues Harrop was not regularly exposed to coal dust for a cumulative period of a year or more during his employment from November 1973 to February 1975.

The ALJ found Bridger had not rebutted the statutory presumption that Harrop was regularly exposed to coal dust during his employment as a coal mine construction worker. On review, the Board held the record contained substantial evidence supporting this conclusion. On appeal, OWCP admits that in reaching their decisions, the ALJ and the Board interpreted the phrase "coal mine dust" in 20 C.F.R. § 725.202(a) to mean all dusts generated in the coal mine environment as opposed to only dust emanating directly from coal. To determine whether Bridger was properly designated the responsible operator we must decide whether this interpretation of the regulatory language is overly broad.

■ The Secretary of Labor has not promulgated a regulation interpreting the phrase "coal mine dust" to which we might defer. The Board's interpretation of the Secretary's regulation is entitled to no deference from this court. *See Potomac Elec. Power Co. v. Director, OWCP,* 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514 n. 18, 66 L.Ed.2d 446 (1980). As the court in *Pate* explained: "The Board is a quasi-judicial body which is empowered to resolve legal issues, but not to engage in overall administration through rule-making." 833 F.2d at 264 (citation omitted). We exercise plenary review in determining whether the Board's interpretation of 20 C.F.R. § 725.202(a) is consistent with Congress's intent as expressed in the Black Lung Benefits Review Act.

■ Our review is limited to determining whether the ALJ and the Board properly interpreted the phrase "coal mine dust" so it is consistent with the meaning of "coal dust" in the statute. The Board asserts a coal mine construction worker who has been exposed to any dust generated in the coal mine environment has been exposed to coal dust. The word "coal" in the statute is meaningless, however, if "coal dust" means all dusts. Under the Board's proposed interpretation, "coal" would be superfluous because it would not modify "dust" in any way. We will not construe a statute in a way that renders words or phrases meaningless, redundant, or superfluous. *See Board of Educ. v. Rowley,* 458 U.S. 176, 190 n. 11, 102 S.Ct. 3034, 3042 n. 11, 73 L.Ed.2d 690 (1982) (citing *62 Cases of Jam v. United States,* 340 U.S. 593, 596, 71 S.Ct. 515, 518, 95 L.Ed. 566 (1951)); *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983); *Zeigler Coal Co. v. Kleppe,* 536 F.2d 398, 406 (D.C. Cir.1976). Because the Board's interpretation of the regulation is contrary to the plain language of the statute, we reject its conclusion that a company may be a responsible operator if its coal mine construction workers are exposed to any form of dust for a cumulative period of a year or

more. We agree with the Eleventh Circuit that "coal mine dust" is dust containing coal. *See Pate,* 833 F.2d at 266.[1]

The legislative history of the 1977 amendment to the Act supports our interpretation of "coal mine dust." The Senate report on the proposed amendment states coverage should be extended to individuals "when they work in conditions substantially similar to conditions in underground coal mines." S.Rep. No. 209, 95th Cong., 1st Sess. 21 (1977), U.S.Code Cong. & Admin. News 1978, p. 237. This statement reveals Congress did not intend such a broad definition of "coal mine dust" to permit compensating workers exposed to any form of dust in a coal mine environment. Although a coal mine construction worker may be exposed to significant quantities of rock dust while he or she is involved in overburden removal, this dust does not contain coal.

■ Here, Bridger cannot be the responsible operator under the Act. Harrop was employed by Bridger from November 1973 until February 1975. Harrop was not regularly involved in the removal of overburden until April 1974. There is no evidence indicating Harrop was regularly exposed to dust containing coal before this date. The relevant period from April 1974 to February 1975 does not constitute a year. Thus, we conclude Bridger cannot be liable under the Black Lung Benefits Act because Harrop was not regularly exposed to coal dust for the cumulative period of a year.

OWCP contends Harrop was a "miner" even under this narrow interpretation of "coal mine dust" because he was exposed to the dust arising out the removal of outcrop coal—dust generated during the extraction or preparation of coal. We disagree. The evidence in the record indicates Harrop was not regularly exposed to coal dust for a cumulative period of a year or more while employed by Bridger. Between January 1974 and March 1974, Harrop re-

moved overburden during his lunch hour to earn overtime pay. During this time, other operators exposed some coal outcrop. Harrop was not in the vicinity of these removal operations. There was no other opportunity for Harrop to be exposed to coal dust until he became involved in overburden removal on a regular basis in April 1974. Although Harrop may have been regularly exposed to coal dust after this time, this period of exposure lasted no more than ten months.

Because Harrop could only have met the regulatory definition of "miner" for a cumulative period of no more than ten months while employed by Bridger, we hold Bridger is not liable for the payment of benefits to Harrop's widow under the Black Lung Benefits Act. We DISMISS appeal no. 89–9564. In appeal no. 90–9520, we REVERSE the Board's decision and REMAND for further proceedings consistent with this opinion.

---

1. OWCP asserts our narrow reading of "coal mine dust" is inconsistent with the court's holding in *Williamson Shaft Contracting Co. v. Phillips,* 794 F.2d 865 (3d Cir.1986). We agree with the Eleventh Circuit's conclusion, however, that the *Phillips* decision "addressed only the validity of the regulation referring to 'coal mine dust.' That opinion did not address the scope and meaning of the term." *Pate,* 833 F.2d at 265.