804 F.2d 235
 42 Fair Empl.Prac.Cas. 256,
41 Empl. Prac. Dec. P 36,605,
7 Employee Benefits Ca 2609
Edward POTENZE, Patrick J. Lynch, John Esposito and Henry
Ankner, Plaintiffs- Appellees,
v.
NEW YORK SHIPPING ASSOCIATION, INC., International
Longshoremen's Association, AFL-CIO and the Trustees of the
Guaranteed Annual Income Fund of the New York Shipping
Association, Inc.-Interional Longshoremen's Association,
AFL-CIO, Defendants-Appellants.
 No. 1420, Docket 86-7266.
 United States Court of Appeals,
Second Circuit.
 Argued June 11, 1986.
Decided Oct. 31, 1986.
 
 Donato Caruso, New York City (Lambos, Flynn, Nyland & Giardion, New York City), for defendants-appellants New York Shipping Association, Inc. and Trustees of the NYSA-ILA GAI Fund.
 Ernest Mathews, New York City (Thomas W. Gleason, New York City), for defendants-appellants International Longshoremen's Association, AFL-CIO and Trustees of the NYSA-ILA GAI Fund.
 James Sullivan, New York City (Sullivan, Marshall & McKeegan, New York City), for plaintiffs-appellees.
 Before OAKES, ALTIMARI, and MAHONEY, Circuit Judges.
 MAHONEY, Circuit Judge:
 
 
 1
 Plaintiffs are longshoremen employed by the New York Shipping Association ("NYSA"). The collective bargaining agreement between their union and the NYSA created the "Guaranteed Annual Income" ("GAI") plan to mitigate the widespread unemployment that accompanied the use of containers in shipping. GAI creates a minimum annual income by supplementing wages and governmental benefits, such as unemployment, up to a guaranteed minimum amount, now between $33,000 and $36,000. Benefits end at age 70. Over time, the program's cost has increased dramatically, causing the NYSA to negotiate for cost reductions.
 
 
 2
 The Internal Revenue Service ("IRS") originally took the position that GAI was a supplemental unemployment compensation benefit, but was subject to Social Security taxes. Accordingly, longshoremen receiving GAI could not receive Social Security income ("SSI"). In 1979, however, the IRS held that GAI was not subject to federal employment taxes, including the Social Security tax, making longshoremen eligible for SSI.
 
 
 3
 The NYSA sought to offset the newly available SSI from the GAI benefits. An agreement was reached with the union providing that:
 
 
 4
 Employees 65 years of age or over who qualify for Social Security shall continue to be eligible for GAI except that, in addition to current contractual deductions, there shall also be deducted the amounts they would have received from Social Security....
 
 
 5
 Under the Social Security law, payments may begin either at age 62 or 65. If, however, the recipient opts for payments to commence at age 62, the amount of each payment is reduced. Thus, if the GAI plan offset SSI at age 62, the payee would either have to accept less current income for greater later income (subtracting the potential SSI from GAI from age 62 to 65, but only accepting SSI at age 65), or accept the same total income between ages 62 and 70, and a lesser income after age 70 (subtracting actually received SSI from GAI from age 62 to 65, but getting only the smaller SSI payments in the period after age 70 when GAI payments end).
 
 
 6
 Plaintiffs, all over age 65, claim that the offset provision quoted above violates the Age Discrimination in Employment Act, 29 U.S.C. Secs. 621-634 (1982) ("ADEA"), because it allows persons between ages 62 and 65 to receive full GAI benefits plus any social security benefit opted for (giving those who opt for SSI at age 62 a windfall for those three years),[1] while offsetting SSI benefits from GAI payments to those over age 65.
 
 
 7
 In granting plaintiffs' motion for summary judgment, the District Court held that plaintiffs showed a prima facie case under the ADEA, because the offset treated employees over 65 differently than those age 62-65,[2] and that defendants did not establish a defense under section 4(f)(2) of the ADEA, 29 U.S.C. Sec. 623(f)(2) (1982), of which more later.
 
 Section 4(a) of the ADEA provides in part:
 
 8
 It shall be unlawful for an employer--
 
 
 9
 (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
 
 
 10
 (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age....
 
 
 11
 29 U.S.C. Sec. 623(a) (1982).
 
 
 12
 Under the ADEA, " '[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free ... not to provide the benefit at all.' " Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621, 83 L.Ed.2d 523 (1985) (quoting Hishon v. King & Spalding, 467 U.S. 69, 75, 104 S.Ct. 2229, 2234, 81 L.Ed.2d 59 (1984)). In Thurston, TWA pilots who became disqualified from serving as pilots for reasons other than age automatically displaced less senior flight engineers. However, pilots disqualified upon reaching retirement age were not automatically given the flight engineer positions, though the pilots usually got the positions. Id. at 120 & n. 15, 105 S.Ct. at 621 & n. 15. The court held that a prima facie case existed because "the method of transfer available to a disqualified captain depends upon his age." Id. at 121, 105 S.Ct. at 622.
 
 
 13
 The NYSA argues that the offset plan does not treat the age 65 group disparately, but rather only seeks to equalize benefit payments between those receiving SSI and those not receiving SSI. It nonetheless is a plan which discriminates among recipients on the basis of age. This is probably all that Thurston requires.
 
 
 14
 Appellant also relies, however, on section 4(f)(2) of the ADEA, which provides in part:
 
 
 15
 It shall not be unlawful for an employer, employment agency, or labor organization ... to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter....
 
 
 16
 29 U.S.C. Sec. 623(f)(2) (1982).
 
 
 17
 This defense requires the employer to prove that a bona fide benefit plan exists, that the action at issue is taken in observance of the plan's terms, and that the plan is not a subterfuge to evade the purposes of the ADEA. EEOC v. Home Insurance Co., 672 F.2d 252, 257 (2d Cir.1982).
 
 1. Bona Fide Benefit Plan
 
 18
 Plaintiffs argue that GAI is not a bona fide plan because the offset is not justified by age-related cost considerations. We reject this contention because, to the extent such considerations must be proven, see Cipriano v. Board of Education, 785 F.2d 51, 54 (2d Cir.1986) (rejecting argument that section 4(f)(2) is available only when "actuarially significant" cost considerations are proven but noting presence of significant cost considerations in early retirement incentive plans); but cf. EEOC v. Home Insurance Co., 672 F.2d 252, 257 (2d Cir.1982) (parties stipulated that plan was bona fide "because ... employees who retired pursuant to its terms received substantial benefits"); Marshall v. Hawaiian Telephone Co., 575 F.2d 763, 765 (9th Cir.1978) ("parties conceded that the plan was bona fide in the sense that it existed and paid benefits"), appellants have done so as a matter of law. Here there can be no doubt that the GAI offset results in significant savings to the fund. And as Judge Friendly reasoned in Cipriano:For the purpose of determining whether a plan is a "bona fide employee benefit plan" within the meaning of Sec. 4(f)(2), it is immaterial that a more nicely tailored plan [might have distributed the cost savings more evenly among various age groups]. The way the plan is structured affects only whether it might be a subterfuge to evade the purposes of the Act, not whether it qualifies generically for the shelter of Sec. 4(f)(2).
 
 
 19
 785 F.2d at 55.
 
 2. Subterfuge
 
 20
 A subterfuge under the Act is, in its ordinary dictionary sense, "a scheme, plan, stratagem, or artifice of evasion." United Air Lines, Inc. v. McMann, 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977). This requires some showing of intent, see id., or, to rebut intent, a showing by the defendant of non-age-based reasons for the plan. See Cipriano, 785 F.2d at 57-58; EEOC v. Home Insurance Co., 672 F.2d 252, 257, 258-59, 260 (2d Cir.1982). The plan need not be the best available plan, though obviously if it is not, the proffered reasons for the structure of the plan will have less force. Cipriano, 785 F.2d at 55; see also Home Insurance Co., 672 F.2d at 263 (rejecting defendant's reasons as specious, unrelated to the plan, and illegal under the ADEA).
 
 
 21
 The District Court held that the GAI-social security offset was a subterfuge to evade the purposes of the ADEA, because better alternatives were available.[3] This was error.
 
 
 22
 GAI is designed to provide only a minimum income. Offsetting SSI at age 65 furthers that goal. Offsetting SSI at age 62 would cause recipients either to forego the amount of the SSI between ages 62 and 65 (if the beneficiary chose not to receive SSI) or to receive less SSI past age 70 (if the beneficiary chose to receive SSI commencing at age 62). Thus, the plan equalizes the effect of the 1979 IRS ruling while avoiding windfall benefits to older members of the union.
 
 
 23
 Moreover, the offset is in line with the theme of regulations adopted by the Department of Labor in implementation of the ADEA with respect to offsets of Medicare benefits (a social security program) against payments made pursuant to private health benefits plans. The pertinent regulation provides:
 
 
 24
 An employer does not violate the Act by permitting certain benefits to be provided by the Government, even though the availability of such benefits may be based on age. For example, it is not necessary for an employer to provide health benefits which are otherwise provided to certain employees by Medicare. However, the availability of benefits from the Government will not justify a reduction in employer-provided benefits if the result is that, taking the employer-provided and Government-provided benefits together, an older employee is entitled to a lesser benefit of any type (including coverage for family and/or dependents) than a similarly situated younger employee. For example, the availability of certain benefits to an older employee under Medicare will not justify denying an older employee a benefit which is provided to younger employees and is not provided to the older employee by Medicare.
 
 
 25
 29 C.F.R. Sec. 860.120(e) (1985); see also id. Sec. 860.120(f)(ii)(A) (Medicare payments may be "carved out" from an existing health insurance plan, which then pays only those benefits which are not paid for by Medicare); id. Sec. 860.120(f)(ii)(B) (outlining procedure for such a carve-out).
 
 
 26
 Plaintiffs, however, urge us to adopt the position that in implementing an SSI offset, NYSA must force its employees to accept lesser social security payments after age 65 (although economic detriment would be deferred until age 70 because of compensating GAI payments), or to accept lesser benefits from age 62 to 65. Both alternatives would be unacceptable. The latter would give the employee less total benefits due to his age. The former would impair the employee's later government benefits in order to maintain his present employment benefits, an indirect way to accomplish the same deprivation. Accordingly, we conclude that the statutory interpretation for which plaintiffs contend, and which was adopted below, would in practical effect operate to frustrate the purposes of the ADEA.
 
 3. Conclusion
 
 27
 Summary judgment decided on submission is subject to plenary, de novo review. See Doe v. New York University, 666 F.2d 761, 765 (2d Cir.1981). This court also has the power in appropriate circumstances to reverse the district court's grant of summary judgment and to grant summary judgment for the nonmoving party. See Ithaca College v. NLRB, 623 F.2d 224, 229 (2d Cir.), cert. denied, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); Abrams v. Occidental Petroleum Corp., 450 F.2d 157, 165-66 (2d Cir.1971), aff'd sub nom. Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); 6 Moore's Federal Practice p 56.12. This is appropriate when the issues have been fully developed, the opponent has had a full and fair opportunity to litigate the question, and no new facts would be developed on remand. Compare Ithaca College, 623 F.2d at 229 (summary judgment not granted because issue not addressed below) with Abrams, 450 F.2d at 165-66 (summary judgment granted to nonmoving party because briefs showed nothing to suggest remand would be appropriate and "inquiry at the argument failed to reveal any new facts that might be adduced by [appellees] at an evidentiary hearing").
 
 
 28
 Because the only issue remaining, whether the challenged action was taken in accordance with the plan, is not in dispute and is clear from the submissions on appeal, we reverse the court's grant of summary judgment and grant summary judgment for the defendants-appellants.
 
 
 29
 Reversed and the complaint is dismissed on the merits.
 
 
 
 [1]
 Note that this windfall, as indicated earlier, carries with it the price tag of reduced SSI payments after age 70. Note further that if an age 62-65 employee nonetheless elects to receive SSI commencing at age 62, his combined benefits from ages 62-65 will exceed those of both older and younger receipients of GAI
 
 
 [2]
 But see supra note 1
 
 
 [3]
 The lower court rejected defendants' position that initiating the offset at age 65 was a non-violative protection of the longshoremen's post-70 SSI. The asserted reason for the offset was not found to be unrelated to the plan, or to be specious, see Home Insurance Co., 672 F.2d at 263 (rejecting defendants' rationales as either unrelated to the plan, specious, or illegal under the ADEA); rather, the court simply held that the alleged justification was "somewhat disingenuous." Memorandum Op. at 18. It was noted that a beneficiary receiving SSI between ages 62 and 65 could save and invest that money and "build a considerable res by the time he reached 70. These proceeds may well compensate for any reduced Social Security benefits after age 70." Id. at 18 n.* (emphasis added)