**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**CITY OF MT. LEBANON, PENNSYLVANIA.**

No. 87–3189.

United States Court of Appeals, Third Circuit.

Argued Oct. 26, 1987.

Decided March 30, 1988.

Warren Duplinsky (argued), E.E.O.C., Washington, D.C., for appellant.

John J. Myers (argued), Eckert, Seamans, Cherin and Mellott, Pittsburgh, Pa., for appellee.

Before HIGGINBOTHAM, HUTCHINSON and SCIRICA, Circuit Judges.

### OPINION OF THE COURT

SCIRICA, Circuit Judge.

Age discrimination, one commentator recently observed, is "the grayest, and thereby the most troublesome, area" of employment discrimination law. *See* J. Kalet, *Age Discrimination in Employment Law* ix (1986). Because in most instances "direct evidence of the employer's motivation is unavailable or difficult to acquire ...", cases involving an employer's intent are particularly troublesome. *See Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 897 (3d Cir.) (en banc) (citing *Dillon v. Coles*, 746 F.2d 998, 1003 (3d Cir.1984)), *cert. dismissed,* — U.S. —, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). This case is no different: we must examine an employer's decision-making process in light of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634 (1982).

Our inquiry is twofold. First, we must determine whether the City of Mt. Lebanon's decision to maintain its R16–73 dis-

ability plan, after being urged to modify it by its insurance carrier, constituted a willful violation of the ADEA, triggering the statute's three-year limitations period. Second, we must determine whether Mt. Lebanon established that a subsequent disability plan, MEIT, was not a subterfuge to evade the purposes of the ADEA and thereby fell within § 623(f)(2), the statutory exemption for bona fide employee benefit plans. After appellant, the Equal Employment Opportunity Commission (EEOC) sought partial summary judgment, the district court granted summary judgment in favor of Mt. Lebanon on both issues.[1] For the reasons that follow, we vacate and remand.

## I. FACTS AND PROCEEDINGS BELOW

### A. The R16–73 Plan

On February 26, 1986, the EEOC instituted suit against Mt. Lebanon, alleging that termination of disability benefits to employees at age fifty-five under the city's former disability plan (R16–73) violated the ADEA. The last discriminatory act allegedly stemming from the R16–73 plan concerned a June 22, 1983 termination of benefits. Thus, the EEOC's claim was time-barred under the ADEA's two-year limitations period, but not under the three-year period for willful violations. *See* § 626(e)(1) (incorporating 29 U.S.C. § 255(a)). Accordingly, our factual examination proceeds with particular emphasis on factors relating to Mt. Lebanon's possible willfulness.

Mt. Lebanon adopted the R16–73 plan in 1973 and it continued in force until December 31, 1983. As of 1978, benefits paid through the plan were insured under a policy from the Bankers Life Company. Mt. Lebanon, however, continued to pay a portion of the benefits not covered under the Bankers Life policy. Under the plan, disability benefits terminated when an employee reached "normal retirement age." Mt. Lebanon interpreted and applied that phrase to refer to an employee's eligibility for normal retirement benefits, which, ac-

cording to the city's pension plan, covers any employee age fifty-five with twenty-five years of continuous service.

In 1978, Congress amended the ADEA to restrict mandatory retirement based upon age and to extend protection to individuals up to age seventy. *See* § 631. As a result, Bankers Life notified Mt. Lebanon in writing in February, 1979, that the amendment "may have created a need for benefit/rate adjustments to your present group program." App. at 120. The Bankers Life memorandum noted that proposed Department of Labor regulations and guidelines would require modifications in disability plans:

> *Long Term Disability* —One of two proposed alternates may be implemented. The first simply provides that LTD coverage must continue until age 70. The second alternate provides that LTD benefit payments may cease at age 65 for those employees who were disabled prior to age 60 but must be continued for at least 5 years (but not beyond age 70) for those disabled on or after age 60.

> Although the DOL has not finalized the proposed regulations, we have seen *no* indications that the January 1, 1979 effective date will be postponed. Since compliance is the direct responsibility of each employer, we wanted you to have this status report now. . . .

App. at 121 (emphasis in original).

Bankers Life notified the city in August, 1979 that federal rules and guidelines concerning the 1978 ADEA amendments had been issued in final form. App. at 122. "The purpose of this letter is to explain how the rules affect Group Life, Disability and Medical Expense coverages and to present suggestions for installing any necessary benefit revisions. . . ." *Id.* Bankers Life stated that "[m]ost Group Long Term Disability plans presently eliminate coverage at age 65. This is no longer permitted and such plans must be revised." *Id.* at 123. Bankers Life cautioned, however, that its suggestions were not intended as legal advice and that each insured

---

1. In order to decide both issues, we must assume, as did the district court, that the EEOC could establish a prima facie case of an underlying violation.

should consult its own attorney concerning the ADEA amendments. *Id.* at 124.

Mt. Lebanon authorized Bankers Life on November 19, 1979 to change the R16–73 plan. The city changed the portion of the plan insured by Bankers Life, but did not change that portion of the plan under which it provided co-payments. In 1982, the city terminated payments to six employees under the unmodified co-payment portion of the plan, thereby causing a reduction in disability benefits to those employees. As a result, the EEOC sought lost benefits and liquidated damages on the employees' behalf, alleging that the city's continuation of pre–1979 co-payment portion of the plan violated the ADEA. For example, James Gordon, a fireman disabled at age fifty-two was receiving $1,450 per month, but when the city did not modify its co-payment portion of the plan, his benefits were reduced to $1,250 at age fifty-five. Accordingly, the EEOC sought to recover the $200 monthly difference Gordon would have received until 1993, when he would turn age sixty-five.

Until the 1982 benefit reductions, no question arose concerning the city's partial modification of the R16–73 plan. At that time, Mt. Lebanon was informed by counsel that it could lawfully terminate its co-payment portion of disability benefits to a former police officer, age fifty-five, with thirty-three years of service. The city explained its failure to modify its portion of the plan by relying on a statement of its current finance director that she had not read nor been made aware of the insurance company notices. App. at 24 (Taylor affidavit).

In light of these facts, the EEOC maintained that Mt. Lebanon had willfully violated the ADEA by refusing to modify its disability plan, thereby terminating benefits to older employees, despite warnings from Bankers Trust that the plan discriminated based on an employee's age. Apply-

ing the "knew or reckless disregard" willfulness standard set forth by this court in *Brock v. Richland Shoe Co.*, 799 F.2d 80, 83 (3d Cir.1986) (applying 29 U.S.C. § 255(a)), *cert. granted,* —— U.S. ——, 108 S.Ct. 63, 98 L.Ed.2d 27 (1987), the district court granted summary judgment in favor of Mt. Lebanon, holding that the R16–73 claim was time-barred because Mt. Lebanon had not willfully violated the ADEA. *E.E.O.C. v. City of Mt. Lebanon,* 651 F.Supp. 1259, 1260–62 (W.D.Pa.1987).

### B. The MEIT Plan

Adding to its claim on the R16–73 plan, the EEOC amended its complaint April 28, 1986, asserting that Mt. Lebanon's termination of benefits to employees age sixty-two through sixty-eight under the 1984 MEIT plan violated the ADEA. Mt. Lebanon contended, however, that the MEIT plan was exempt from ADEA coverage because it was a bona fide employee benefit plan and not a subterfuge to evade the purposes of the ADEA. *See* 29 U.S.C. § 623(f)(2).

Under the MEIT plan, which is presently in effect,[2] Mt. Lebanon no longer terminates benefits upon eligibility for normal retirement. Instead, it discontinues benefits based on a schedule providing: (1) payment until age sixty-five or normal retirement, whichever occurs first, if the disability occurred before age sixty-two; or (2) payment until age seventy, based on a sliding scale for individuals between ages sixty-two and sixty-nine.[3]

The EEOC alleged that Mt. Lebanon's MEIT plan violated the ADEA because: (1) it did not provide benefits until age sixty-five for those disabled before age sixty; (2) it failed to provide benefits for five years for those disabled between age sixty and sixty-five; (3) it failed to provide benefits until age seventy for individuals disabled between the ages of sixty-six and sixty-

---

**2.** The city abandoned the R16–73 plan in favor of the MEIT plan effective January 1, 1984.

**3.** An employee disabled at age sixty-two receives benefits for three and one-half years, and as the age of disability increases, the duration of bene-

fits decreases. For example, an employee disabled at age sixty-three would receive benefits for three years, while an employee disabled at age sixty-nine would receive benefits for only one year.

eight; and (4) Mt. Lebanon had not established that this lower level of benefits for older employees was supported by sufficient age-related cost considerations. *See* 29 C.F.R. § 860.120(f)(iii) (1982). Accordingly, the EEOC contended that the MEIT plan was a subterfuge to evade the purposes of the ADEA and not exempt under § 623(f)(2). Mt. Lebanon, however, maintained that pursuant to § 860.120(f)(iii), it had demonstrated sufficient age-related cost considerations to establish that its plan was not a subterfuge. Specifically, it relied on a schedule prepared by its insurer, which concluded that as a general rule the cost of providing disability benefits increases with an employee's age. *See* App. at 43.

The district court granted summary judgment in favor of Mt. Lebanon, holding that the city had disproved subterfuge by establishing "an economic or business purpose or valid reason for the challenged terms even though every detail of the cost-justification regulations is not met." *E.E.O.C. v. Mt. Lebanon,* 651 F.Supp. at 1263.

## II. DISCUSSION

When reviewing a grant of summary judgment, we must apply the same test the district court should have utilized initially. *Sorba v. Pennsylvania Drilling Co., Inc.,* 821 F.2d 200, 203 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988); *Chipollini,* 814 F.2d at 896 (citing *Goodman v. Mead Johnson & Co.,* 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732,. 50 L.Ed.2d 748 (1977)). The principles governing summary judgment are well settled: it is

appropriate only in the absence of a genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Material facts are identified by reference to the substantive law, *Chipollini,* 814 F.2d at 896, and an issue is genuine only if the "evidence is such that a reasonable jury could find for the nonmoving party." *Equimark Comm. Fin. Co. v. C.I.T. Fin. Serv. Corp.,* 812 F.2d 141, 144 (3d Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Moreover, we must view the record in the light most favorable to the party opposing the motion and resolve all "inferences, doubts and issues of credibility" against the nonmoving party. *E.E.O.C. v. Westinghouse Elec. Corp.,* 725 F.2d 211, 216 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). We must refrain, however, from weighing competing inferences, resolving disputed facts, and determining the truth of the matter. *Jackson v. University of Pittsburgh,* 826 F.2d 230, 233 (3d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988); *Sorba,* 821 F.2d at 203; *Chipollini,* 814 F.2d at 900; *Equimark,* 812 F.2d at 144. Our role is to determine the existence of a genuine issue for trial. *Sorba,* 821 F.2d at 203 (citing *Anderson,* 106 S.Ct. at 2511).

### A. Willfulness

As a threshold matter, we must determine the proper standard for "willful" violations triggering the three-year limitations.[4] Relying on our decision in *Richland Shoe,* 799 F.2d 80, a case applying the

---

**4.** Mt. Lebanon contends that before addressing the willfulness issue, we must first determine whether the R16–73 plan is exempt from the ADEA under § 623(f)(2). Brief of Appellee at 15 (citing *E.E.O.C. v. Westinghouse Elec. Corp.,* 725 F.2d 211, 221 (3d Cir.1983), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). Here, however, we are presented with a factual record that is silent as to the applicability of the § 623(f)(2) exemption to the R16–73 plan. The district court granted summary judgment on the willfulness question, and we limit our review to that issue.

Furthermore, contrary to Mt. Lebanon's assertion, our decision in *E.E.O.C. v. Westinghouse*

does not state such a broad proposition. In that case, the willfulness question and the § 623(f)(2) question were intertwined. The willfulness determination turned on whether Westinghouse had validly invoked the § 623(f)(1) or (f)(2) defense with respect to its severance plan. *See id.* at 218. Thus, in order to decide whether Westinghouse had willfully violated the ADEA, we were first required to determine whether Westinghouse had properly asserted the exemption for bona fide benefit plans. In this case, the two inquiries are not intertwined.

Fair Labor Standards Act (FLSA), 29 U.S. C. §§ 201–219 (1982), the district court concluded that an employer acts willfully if it " 'knew or showed reckless disregard for the matter of whether its conduct was prohibited....' " 651 F.Supp. at 1260–61 (quoting *Richland Shoe*, 799 F.2d at 83). We agree.

*Richland Shoe* involved the statute of limitations provision of the Portal-to-Portal Act, 29 U.S.C. § 255(a), which is applicable in FLSA proceedings. That provision is relevant here because the ADEA expressly incorporates by reference § 255 for statute of limitations purposes. 29 U.S.C. § 626(e)(1).

In *Richland Shoe* we declined to adopt the more lenient "in the picture" standard first enunciated in *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir. 1972), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972). *Jiffy June* permitted plaintiffs to prove willful violations for statute of limitations purposes by showing that the employer knew the FLSA was "in the picture." *Id.* We held, however, that willful acts require a deliberate effort, *i.e.*, "an intent to bring about certain ends or reckless disregard with respect to those ends." *Richland Shoe*, 799 F.2d at 82 & n. 5, 83. Any other standard would transform almost any violation into a willful act and thereby eviscerate congressional intent to create a two-tiered liability scheme. *Id.* at 83. Finally, we noted that the Supreme Court had adopted an identical willfulness standard for the purpose of assessing double damages under § 626(b) of the ADEA. *Id.* at 83 (citing *Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)).

To be sure, the Supreme Court in *Thurston* declined to speculate whether the "knew or reckless disregard" standard was appropriate for the ADEA statute of limitations. *See Thurston*, 469 U.S. at 127–28, 105 S.Ct. at 624–25. Yet, the principles

underlying the Court's opinion in *Thurston*, examined in light of the statutory language and structure, apply with equal force in the ADEA statute of limitations context. *See Richland Shoe*, 799 F.2d at 83; *see also Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 311 (7th Cir.1986) (applying the FLSA).[5] Indeed, the Fifth Circuit, which decided *Jiffy June*, has acknowledged that *Thurston* overrules *Jiffy June*, and that the definition of willfulness for liquidated damages applies equally to the definition of willfulness for the statute of limitations. *See Peters v. City of Shreveport*, 818 F.2d 1148, 1167–68 (5th Cir.1987).

Although some courts have distinguished the willfulness standard for liquidated damages from the standard for statute of limitations, *see, e.g., Secretary of Labor v. Daylight Dairy Products, Inc.*, 779 F.2d 784, 789 (1st Cir.1985), we declined to do so. Instead, we concluded that expanding liability by increasing the limitations period and imposing liquidated damages were equally punitive. Accordingly, we found no basis for imposing different meanings for the same term used in similar contexts in the same statutory scheme. *Richland Shoe*, 799 F.2d at 83–84; *see also Walton*, 786 F.2d at 311.

Applying the proper standard, the district court concluded that the city did not act willfully because: (1) the city's current fiscal officer had no knowledge of the 1979 Bankers Trust memos; (2) the city was not confronted with a claim that its R16–73 plan violated the ADEA until 1982; and (3) the city had received a favorable legal opinion on the plan in 1982. *See E.E.O.C. v. Mt. Lebanon*, 651 F.Supp. at 1261. These factors could show that Mt. Lebanon's conduct was not willful. Indeed, the district court apparently was persuaded by the absence of any challenge to the plan until 1982, and apparently found that the Banker's Life memos were merely advisory.

5. Although the Supreme Court has granted certiorari in *Richland Shoe* on the "willfulness" issue, we nevertheless proceed to decide this appeal. By holding that the EEOC may be able to establish that Mt. Lebanon knew or recklessly disregarded whether its conduct violated the ADEA, *see infra*, we necessarily hold that the EEOC may be able to establish that Mt. Lebanon acted with knowledge that the ADEA was in the picture, or that Mt. Lebanon may have violated any other more lenient standard.

This case, however, cannot be decided on these facts alone.

Although the court was required to view the evidence in the light most favorable to Mt. Lebanon when it considered the EEOC's motion for summary judgment, that does not necessarily dictate summary judgment for the nonmovant. This principle is especially important here because the district court used the EEOC's motion to grant summary judgment in favor of Mt. Lebanon. "The inappropriateness of summary judgment when motive is in issue is not dispelled by the fact that summary judgment is sought by both sides." *E.E. O.C. v. Home Insur. Co.*, 672 F.2d 252, 257 (2d Cir.1982). Here, the district court carefully identified the facts relevant to the question of Mt. Lebanon's intent, but then elected between competing reasonable inferences from those facts.

▮ In deciding at the summary judgment stage that Mt. Lebanon did not act willfully, the district court assumed the fact-finding function expressly reserved for trial. *Jackson*, 826 F.2d at 234 (quoting *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1178 (3d Cir.1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977)). Willfulness is a factual question requiring an examination of an employer's "state of mind, knowledge, intent and belief regarding the propriety of [its] actions." *E.E.O.C. v. Westinghouse*, 725 F.2d at 218. Whenever reasonable minds could differ in characterizing the employer's intent, the trier of fact must resolve the conflict. *See Jackson*, 826 F.2d at 235. The EEOC established such a conflict by demonstrating several plausible and reasonable inferences that may be drawn from the underlying facts.

By granting summary judgment in favor of Mt. Lebanon, the district court apparently believed Mt. Lebanon's contention that it had no knowledge of its insurer's 1979 notices. Without this knowledge, Mt. Lebanon asserts, its termination of benefits in 1982 cannot be viewed as willful. Mt. Lebanon does not contest that it never received the notices; rather, it maintains that the city official responsible for implementing the disability plan in 1982 was not aware of the notices. This is a jury question.

The memos warning of ADEA noncompliance and suggesting alternative benefit plans were sent in 1979 by Bankers Trust, the city's own insurance carrier. The city acted upon this warning by modifying the insured portion of its disability plan. For some reason, however, the city declined to modify the copayment portion of the plan financed solely with city funds, and in 1982 terminated the co-payment portion of six employees' benefits. Thus, a fact-finder could infer that someone in a position of authority in the city approved only a partial modification of the R16–73 plan based on the warnings in the Bankers Trust memos.

The city argues that these facts show its conduct was, at worst, negligent, not willful. Resolution of this issue, however, depends on credibility judgments that must be reserved for trial, where opposing counsel can properly challenge such assertions. *See Jackson*, 826 F.2d at 235; *Losch v. Borough of Parkesburg*, 736 F.2d 903, 909 (3d Cir.1984). For example, it is unclear whether the city official who said she was unaware of the 1979 memos was employed by the city at that time. *See* App. at 24 (Taylor affidavit). Moreover, these facts call into question the city's motive for declining to modify its copayment portion of the plan.

In addition, the Bankers Trust memos raise a disputed question of material fact whether the city recklessly disregarded the possibility it was violating the ADEA. Although Bankers Trust stated its warnings were not legal advice, a reasonable juror could construe the memos as providing sufficient notice of an ADEA violation. Viewed in this manner, the city would have been required to at least seek formal legal advice in 1979 concerning the lawfulness of its portion of the R16–73 plan.

Finally, in light of the 1979 memos and the plan's subsequent partial modification, reasonable minds could differ on the significance of the city solicitor's 1982 recommendation to continue R16–73 benefit terminations. There are no facts in the record whether the solicitor was informed of the

prior notices from Bankers Trust or of the inconsistency between benefits in the insured portion of the plan and the city's copayment portion. Thus, the city's continuation in 1982 of its own portion of the R16–73 plan could be viewed as having been made in reckless disregard of the ADEA. Although the city's decision to ultimately seek a professional legal opinion is relevant to the willfulness inquiry, it is hardly dispositive where the attorney was first consulted three years after the city learned the plan might be unlawful. Under these facts, receipt of a legal opinion cannot immunize conduct that might otherwise be construed as a willful violation.

Therefore, the issue of willfulness turns on a credibility determination and on the fact-finder's view of conflicting but reasonable inferences drawn from the material facts. Resolution of these matters was inappropriate for summary judgment. *See Jackson*, 826 F.2d at 234, 235; *Chipollini*, 814 F.2d at 900, 901; *E.E.O.C. v. Westinghouse*, 725 F.2d at 218.

### B. The MEIT Plan as a Subterfuge

■ The ADEA makes it unlawful for an employer

> to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age....

29 U.S.C. § 623(a)(1). The Supreme Court has construed the ADEA to "broadly prohibit[ ] arbitrary discrimination in the workplace based on age." *Thurston*, 469 U.S. at 120, 105 S.Ct. at 621 (quoting *Lorillard v. Pons*, 434 U.S. 575, 577, 98 S.Ct. 866, 868, 55 L.Ed.2d 40 (1978)). Employers may not dole out in a discriminatory manner benefits that are part and parcel of the employment relationship—even if the employer has discretion in granting the bene-

fit in the first instance. *See Thurston*, 469 U.S. at 121, 105 S.Ct. at 621 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 75, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984)). Congress's stated purpose supports this broad construction. The ADEA was enacted to: (1) promote employment of older persons based on ability, rather than age; (2) prohibit arbitrary age discrimination in employment; and (3) promote resolution of age-based employment problems. *See* 29 U.S.C. § 621(b).

■ Nevertheless, any action in observance of a bona fide employee benefit plan is exempt from the ADEA's broad scope. Section 623(f)(2) states that it shall not be unlawful for an employer

> to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter....

*Id.* By invoking this defense, Mt. Lebanon bears the burden of establishing that it acted in observance of a bona fide plan and that the plan is not a subterfuge to evade the purposes of the ADEA. *E.E.O.C. v. Westinghouse*, 725 F.2d at 223; *see also Potenze v. New York Shipping Ass'n, Inc.*, 804 F.2d 235, 237 (2d Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987). The EEOC concedes that the MEIT plan is a bona fide employee benefit plan and that Mt. Lebanon observes the terms of the plan. The only dispute is whether Mt. Lebanon created the plan as a subterfuge to evade the ADEA prohibition of age discrimination.[6]

Our task is to determine what Congress meant when it required employers to disprove subterfuge. The ADEA itself offers no further explanation, and the Supreme Court has defined "subterfuge" only in broad terms, as "a scheme, plan, stratagem, or artifice of evasion." *United Air*

---

**6.** Because Mt. Lebanon bears the burden of proving the § 623(f)(2) defense, the EEOC was required to establish "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). At that point, Mt. Lebanon was required to "desig-

nate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 2553 (citing Fed.R. Civ.P. 56(e)); *Chipollini*, 814 F.2d at 896; *Equimark*, 812 F.2d at 144. By granting summary judgment in favor of Mt. Lebanon, the district court necessarily held that the city's proof exceeded this burden.

*Lines, Inc. v. McMann,* 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977). Thus, we must turn to the legislative history and the governing regulations for further guidance.

In enacting the § 623(f)(2) exemption, Congress recognized the greater expense incurred by employers providing benefit programs for older employees. This factor, it feared, might discourage employers from hiring older workers "when they might have hired them under a law granting them a degree of flexibility with respect to such matters." *McMann,* 434 U.S. at 200, 98 S.Ct. at 449 (citing Hearings on S. 830 before the Subcomm. on Labor of the Senate Committee on Labor and Public Welfare, 90th Cong., 1st Sess., 27 (1967) (statement of Senator Javits)). Thus, the § 623(f)(2) exception was based on the principle that employers should be relieved of the obligation of providing older employees with benefits equal to benefits for younger employees when it would would be more costly to do so. *See E.E.O.C. v. Borden's Inc.,* 724 F.2d 1390, 1396 (9th Cir.1984); *accord* 124 Cong.Rec. 8218 (March 23, 1978) (statement of Senator Javits) (benefit plans comply with ADEA where cost incurred on behalf of older workers equals cost incurred on behalf of younger workers, even if older workers receive less benefits).[7]

■ Consistent with this intent, federal regulations permit employers with bona fide benefit plans to reduce benefit levels for older workers "to the extent necessary to achieve approximate equivalency in cost for older and younger workers." 29 C.F.R. § 860.120(a)(1).[8] Benefit plans satisfy the statute whenever the cost an employer incurs in providing benefits to older employees equals the cost incurred in providing benefits to younger employees "even though the older worker may thereby receive a lesser amount of benefits...." *Id.* The regulations describe this process as "cost justification"

> Cost data used in justification of a benefit plan which provides lower benefits to older employees on account of age must be valid and reasonable. This standard is met where an employer has cost data which show the actual cost to it of providing the particular benefit (or benefits) in question over a representative period of years. An employer may rely on cost data for its own employees over such a period, or on cost data for a larger group of similarly situated employees.

*Id.* § 860.120(d)(1).

The regulations expressly require cost justification for reduced long-term disability benefits, *id.* § 860.120(f)(iii) (long-term disability benefit reductions are "justifiable only on the basis of age-related cost considerations as set forth elsewhere in this sec-

---

**7.** We recognize that Senator Javits, who was a primary force behind passage of the ADEA, made his 1978 remarks more than ten years after passage of the statute. *See McMann,* 434 U.S. 192, 200 n. 7, 98 S.Ct. 444, 449 n. 7, 54 L.Ed.2d 402 (1977) (remarks made ten years after passage of statute are not part of legislative history). Nevertheless, we find the 1978 remarks helpful for several reasons.

The 1978 statement was made in support of an amendment of § 623(f)(2), in which Senator Javits emphasized that the amendments did not change the present law regarding the cost of providing benefits to older employees. Morover, Senator Javits' statement that Congress approved the "equal cost" concept in enacting the subterfuge provision tracks the Department of Labor's 1969 interpretation of statute. *See E.E.O.C. v. Borden's, Inc.* 724 F.2d 1390, 1396 (9th Cir.1984) (citing 34 Feg.Reg. 9709 (June 21, 1969)). Contrary to Mt. Lebanon's assertion, therefore, 29 C.F.R. § 860.120(a)(1) (1982) was

not enacted based on the Department of Labor's reading of the 1978 legislative history.

Finally, the sparse legislative history relating to this aspect of § 623(f)(2) either supports Senator Javits' comment or does not address it. Indeed, the legislative comments cited by Mt. Lebanon are general observations, but tend to support the Javits' view. *See* Brief of Appellee, at 31–32 n. 13.

**8.** Since assuming enforcement authority over the ADEA, the EEOC has not issued its own interpretations or regulations regarding benefit plans. Instead, the EEOC has incorporated the Department of Labor interpretations, which continue in force. *See* 29 C.F.R. § 1625.10 (1985); *see generally* 52 Fed.Reg. 23,811 (June 25, 1987) (pursuant to transfer of ADEA enforcement authority from the Department of Labor to the EEOC, regulations issued by the Department of Labor continued in effect pending EEOC review).

tion."). Employers may also comply with the ADEA by providing benefits up to age sixty-five for disabilities occurring before age sixty; or by providing benefits up to age seventy, or five years after disablement, whichever occurs first, for disabilities occurring after age sixty. § 860.120(f)(iii)(A), (B). "Cost data may be produced to support other patterns of reduction as well." *Id.* § 860.120(f)(iii)(B).

In support of the reduced benefit schedule in the MEIT plan, Mt. Lebanon submitted a one-page memorandum from its insurer, Cigna, stating in general terms that the cost of providing disability insurance increases as employees grow older. *See* App. at 43. In addition, Mt. Lebanon offered an affidavit from Paul Mockenhaupt, whose firm set up the MEIT plan. App. at 37–38. Mockenhaupt stated that the schedule used in the MEIT plan is applied by most disability insurers in the United States and that the Cigna cost data "shows that the cost of insuring against disability increases with age." *Id.* ¶¶ 5, 6. The city contends that this evidence establishes a sufficient business reason for the MEIT plan, and disproves that the plan was a subterfuge to evade the purposes of the ADEA.

The EEOC does not dispute the underlying facts. Instead, it questions the legal standard used to evaluate Mt. Lebanon's showing of no subterfuge. The EEOC claims Mt. Lebanon's data "without more information does not explain the schedule of benefit duration, [*i.e.*, why older employees receive benefits for a shorter period]. In order to definitively state the schedule [the MEIT plan] is cost justified[,] a nexus between the schedule and the general data must be shown." App. at 142–43 (affidavit of Milton Wollman). The city must establish a "nexus," the EEOC maintains, because "it simply does not make common sense that an economic purpose for a specific graduated benefit reduction schedule [the MEIT plan] can be shown through general data that is not in anyway connected with the specific reductions mandated by the schedule." Brief of Appellant, at 30.

■ The district court declined to apply the EEOC's "nexus" requirement. It held that no authority supported the EEOC's position that Mt. Lebanon's failure to supply cost justification, as required by the regulations, establishes subterfuge as a matter of law. *E.E.O.C. v. City of Mt. Lebanon*, 651 F.Supp. at 1263. Instead, the court held, Mt. Lebanon need only prove "an economic or business purpose or valid reason for the challenged terms even though every detail of the cost-justification regulations is not met." *Id.*

In declining to follow the EEOC regulations' "cost justification" requirement, the district court relied on the Second Circuit's decision in *Cipriano v. Board of Education*, 785 F.2d 51 (2d Cir.1985), as "refusing to endorse every detail" of the regulations interpreting the ADEA. *E.E.O.C. v. Mt. Lebanon*, 651 F.Supp. at 1263. Accordingly, the court read *Cipriano* as permitting employers to show their plan is not a subterfuge by offering any legitimate business reason for the reduced benefits. *See id.* On appeal, Mt. Lebanon cites the Second Circuit's subsequent decision in *Potenze*, 804 F.2d 235, as further support for the district court's holding.

We do not read those cases so broadly. Because neither the Supreme Court nor this court had addressed the "subterfuge" issue, the district court understandably turned to the Second Circuit for guidance. We disagree with the standard set forth, however, and for the reasons that follow, we will vacate the district court's grant of summary judgment. Specifically, we conclude that to disprove subterfuge, Mt. Lebanon must demonstrate why general age-related cost factors required it to reduce benefits for older workers to the extent and in the manner prescribed in the MEIT plan. Because the district court reached a contrary holding based on the Second Circuit's reasoning in *Cipriano*, we first turn to an examination of that decision.

In *Cipriano*, the court focused on a New York pension plan that provided incentives to teachers who volunteered for early retirement. The court addressed two questions concerning the requirements of

§ 623(f)(2). First, it rejected the employees' argument that an employer must demonstrate "actuarially based" cost considerations to prove that the plan was bona fide. *Cipriano*, 785 F.2d at 54, 55. Cost considerations, the court noted, are "immaterial" in determining whether a plan is bona fide and thereby covered under § 623(f)(2). *Id.* at 55. The court concluded that "the way the plan is structured affects only whether it might be a subterfuge." *Id.* Here, the EEOC does not contend that Mt. Lebanon's plan is not bona fide. Thus, this aspect of *Cipriano* is inapplicable.[9]

Next, the *Cipriano* court considered whether the employer had met its burden of disproving that its plan was a subterfuge. It is this aspect of *Cipriano* that is relevant here. The court concluded that the employer must disprove subterfuge even though participation in the plan was voluntary. *Cipriano*, 785 F.2d at 58. In reaching this conclusion, the court recognized the governing federal regulations on the subterfuge requirement. It then noted that the regulations

> seem to put a fairly heavy burden on the employer to justify any age-based distinctions in employee benefit plans on the basis of "age-related cost justifications." While we would not wish to be under-

stood as endorsing every detail of the regulations, we cannot simply disregard them. All that we decide is that even in the case of voluntary early retirement plans the employer ... must come up with some evidence that the plan is not a subterfuge to evade the purposes of the ADEA by showing a legitimate business reason for structuring the plan as it did.

*Id.* The district court apparently construed this quoted passage as rejecting the "cost-justification" requirement set forth in the regulations. Yet the court in *Cipriano* tempered its statement by adding that it cannot "simply disregard" the regulations. Moreover, by requiring the employer to demonstrate a "legitimate business reason for the structuring plan as it did," *id.*, the court in *Cipriano* simply restated the general proposition it had previously set forth in *E.E.O.C. v. Home Insur. Co.*, 672 F.2d at 258–59.[10]

In addition, *Cipriano* was decided in the context of a voluntary early retirement plan. *Cipriano*, 785 F.2d at 58, 59. The court observed that evidence of business reasons required to disprove subterfuge for a voluntary plan "would almost necessarily be less than what was required to make such a showing in the case of a mandatory plan." *Id.* at 59. Here, we are

---

9. The court in *Cipriano* correctly noted that our decision in *E.E.O.C. v. Westinghouse*, 725 F.2d 211 (3d Cir.1983), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984), did not hold to the contrary. In *E.E.O.C. v. Westinghouse*, we concluded that a benefit plan is bona fide under § 623(f)(2) if it is "the type whereby the cost of benefits increases with age." *Id.* at 224. If the nature of the benefit plan is unrelated to any age factors, such as a severance pay plan, we held it cannot be bona fide. *Id.* at 225. In addition, we concluded that the severance pay plan was not "functionally related" to any existing retirement plan, and thereby not exempt from ADEA coverage. *Id.* Thus, by requiring some link between age and the plan, our holding was consistent with congressional intent that only certain types of benefit plans qualify for the ADEA exemption in § 623(f)(2).

In *E.E.O.C. v. Westinghouse*, we did not have occasion to address the issue we confront here, *i.e.*, whether a bona fide plan was a subterfuge to evade the purposes of the ADEA. With respect to the subterfuge inquiry, we must examine an employer's motive or purpose for reducing benefits for older workers. *See id.* at 224 n.

9. Thus, we hold here, *see* Discussion *infra*, that to disprove subterfuge an employer must demonstrate that it reduced benefits for older workers only to the extent required to achieve approximate equivalency in the cost of providing benefits to older and younger workers. This involves more than a showing that the plan is somehow linked to age and pays benefits, *i.e.*, bona fide. It requires an employer to demonstrate why it reduced benefits to the level that it did. *See Karlen v. City Colleges of Chicago*, 837 F.2d 314, 318–20 (7th Cir.1988).

10. In *Home*, the court reversed a grant of summary judgment to an employer whose reasons for reducing the mandatory retirement age were "specious" or "had no relationship whatever to the mandatory age." *Home*, 672 F.2d at 263. Accordingly, the court concluded, the employer had not demonstrated "valid business reasons for its action," and therefore had not disproved subterfuge. *Id.* at 260. The court in *Home* did not discuss the regulations at issue here. Indeed, because the employer's stated reasons lacked merit, the court was not presented with the need to do so.

confronted with a mandatory benefit reduction plan, which, under *Cipriano*, would require a more stringent showing.

Nor are we persuaded, as Mt. Lebanon urges, that the subsequent decision in *Potenze* supports its position. In *Potenze*, the Second Circuit held that to the extent age-related cost considerations must be established to show that a plan is bona fide, appellants had met this burden. *Potenze*, 804 F.2d at 237 (citing *Cipriano*, 785 F.2d at 54). With respect to the relevant issue, *i.e.*, whether a retirement plan that offset Social Security income was a subterfuge, the court held the district court had erred by holding the offset plan was a subterfuge simply because "better alternatives were available." *Id.* at 238. Significantly, the court followed the federal regulations in concluding that the offset was adopted for "non-age-based reasons." *Id.* Relying on § 860.120(e) and § 860.120(f)(ii)(A), which discuss the cost justification requirement, the court determined that the offset was "in line with the theme of regulations adopted by the Department of Labor in implementation of the ADEA with respect to offsets of Medicare benefits...." *Id.* Thus, neither *Cipriano* nor *Potenze* reject the EEOC's cost-justification regulations.

Here, the district court concluded, as a matter of law, that Mt. Lebanon demonstrated its MEIT plan was not a subterfuge by producing a generic schedule illustrating that, as a general rule, the cost of providing benefits increases with age. The court held that the city need not comply with "every detail of the EEOC cost-justification regulations," and must show only that the reduced benefit schedule was based on "an economic or business purpose or valid reason." *See E.E.O.C. v. City of Mt. Lebanon*, 651 F.Supp. at 1263, 1264.[11]

This standard disregards the cost justification rationale that pervades the regulations, and also overlooks an employer's obligation to somehow relate that justification to its plan. In order to "cost justify" a reduced level of benefits for older employees, and thereby disprove subterfuge, an employer must establish a connection or nexus showing how general cost savings data supports the extent of reductions in its particular plan. Without this requirement, an employer could implement a bona fide benefit plan, but then evade the ADEA's purposes by reducing benefits for older workers beyond the level necessary to achieve approximate equivalency in the cost of providing benefits to older and younger workers. The EEOC's regulations properly implement this concept.

 An agency's interpretation is especially important where its specialization is a significant factor supporting the issuance of the regulations. *See generally* 2 K. Davis, *Administrative Law Treatise* § 7.22, at 107 (1979). That fact, however, is not dispositive. Although courts must not disregard an agency's long-standing and contemporaneous interpretation of a statute, *EEOC v. Associate Dry Goods Corp.*, 449 U.S. 590, 600 n. 17, 101 S.Ct. 817, 823 n. 17, 66 L.Ed.2d 762 (1980); *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1972); *Udall v. Tallman*, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), deference to an agency's regulation is unjustified where the interpretation lacks support in the statutory language or legislative history. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984); *Griggs*, 401 U.S. at 434, 91 S.Ct. at 855; *Department of the*

---

11. As further support for its holding, the district court noted that the MEIT plan's benefit schedule is identical to the benefit schedule set forth by the Department of Labor in the agency's 1979 interpretive rule. *E.E.O.C. v. City of Mt. Lebanon*, 651 F.Supp. at 1263 (citing 44 Fed.Reg. 30,648, 30,655 (May 25, 1979)).

This fact, although relevant, is not controlling here. First, the Department of Labor cited the schedule only as example of a plan submitted during the comment period that would be permissible if it were based on reasonable actuarial data. The department expressly cautioned that it had not verified the underlying data or the reasonableness of the assumptions on which it was computed. *See* 44 Fed.Reg. at 30,655. Moreover, the department used the schedule only as an illustration because "[s]tatistics on the rate of disablement for employees over age 65 are scanty." *Id.* Here, the EEOC contends, Mt. Lebanon has not complied with this requirement.

*Navy, Military Sealift Command v. F.L. R.A.*, 836 F.2d 1409, 1410 (3d Cir.1988). Here, however, the EEOC's cost justification requirement constitutes the type of long-standing and contemporaneous agency interpretation deserving recognition. More importantly, based on our independent examination of the statutory scheme, requiring an employer to cost justify its decision to reduce benefits for older workers is consistent with the statute's requirement that the plan cannot be a subterfuge to evade the ADEA's anti-discriminatory purpose. By adding § 623(f)(2), Congress intended to relieve employers of the burden of providing equal benefits to all employees only when the cost of providing lower benefits to older workers is approximately equal to the cost of providing greater benefits to younger workers. *See* Hearings on S. 830, *supra*, at 27; 124 Cong.Rec. at 8218; *E.E.O.C. v. Borden's*, 724 F.2d at 1396. Thus, by allowing reduced benefits to older workers when necessary "to achieve approximate equivalency in cost for older and younger workers," *see* § 860.120(a)(1), the regulations are consistent with the statutory scheme.[12] By viewing cost justification, *i.e.*, the need to achieve approximate equality in benefit cost for older and younger workers, as somehow inconsistent with "business purpose," the district court erred.

The "business purpose" requirement was set forth as a general means of allowing employers to disprove improper motive for reducing older workers' benefits. *See Home Insur. Co.*, 672 F.2d at 258. Yet, merely proffering a business reason for reducing benefit levels, *e.g.*, it saves the employer money, does not necessarily mean an employer was not also using its benefit program to evade the ADEA's purposes. Requiring an employer to cost justify its reduced benefit schedule to disprove subterfuge gives meaning to the "legitimate business purpose" showing. The United States Court of Appeals for the Seventh Circuit recently recognized as much when it interpreted § 623(f)(2) as requiring em-

ployers "to prove a close correlation between age and cost" whenever they use age as a basis for reducing retirement benefits. *Karlen v. City Colleges of Chicago*, 837 F.2d 319 (7th Cir.1988) (citing 29 C.F.R. § 1625(a)(1), (d)(1)–(3)); *see also Henn v. National Geographic Soc.*, 819 F.2d 824, 827 (7th Cir.) (discussing "sound business purpose" test in terms of 29 C.F.R. § 860.120(a)(1)), *cert. denied*, —— U.S. ——, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987).

When an employer produces evidence to disprove subterfuge, the fact finder must assess whether the stated business or economic purpose reasonably justifies the reduced benefits. *See Crosland v. Charlotte Eye, Ear & Throat Hosp.*, 686 F.2d 208, 215 (4th Cir.1982). Cost justification, in a practical sense, demonstrates or quantifies a "non-age-based reason" for an employer's decision to provide lower benefits to older employees. If the cost of a reduced duration of benefits for older workers is approximately equal to the cost of providing the same type of benefits to younger workers, the employer's benefit plan is not a subterfuge.

Thus, in order to establish that reduced benefits are justified by the "approximate equality" rule, employers must link the general data allowing some type of reduction to the specific level of reductions set forth in their plan. Here, Mt. Lebanon relied solely on the general principle that, in most disability plans, the cost of providing benefits increases as employees grow older. This is a generally accepted and reasonable conclusion; indeed, it is usually self-evident in an insurance context because of the increased risks that accompany age. What Mt. Lebanon failed to establish is how this increased cost theory applies to the MEIT plan reductions.

The general conclusions that: (1) the cost of providing benefits increases with an employee's age; and (2) that reducing benefits serves a valid business purpose by saving money, will always apply if

---

12. We do not, however, view the EEOC's regulations as a talisman. Rather, we rely on the regulations as supporting our holding only be-

cause we find them consistent with the statutory language and the legislative intent underlying enactment of § 623(f)(2).

the plan is bona fide. In order to establish that its benefit schedule is not a device to evade the the ADEA's purpose of prohibiting arbitrary age discrimination, Mt. Lebanon must show that it reduced older employees' benefits no more than necessary to compensate for the higher cost of insuring older workers. If, for example, an employer must spend fifty percent more to provide the same benefits to older workers that it provides to younger workers, then it could not reduce an older employee's benefits by seventy-five percent. *See generally Karlen,* 837 F.2d at 319–20. Congress did not intend to allow employers to use the § 623(f)(2) exemption to discriminate based on an employee's age.

We recognize, of course, that the subterfuge inquiry normally requires examination of an employer's subjective "purpose or motive." *EEOC v. Westinghouse Elec. Corp.,* 725 F.2d at 224 n. 9; *accord McMann,* 434 U.S. at 203, 98 S.Ct. at 450. Although evidence of cost justification usually provides a straightforward method of ascertaining an employer's motive by demonstrating whether benefits for older workers were reduced no more than necessary to compensate for the higher cost of insuring older workers, it may not be conclusive if the employer can establish that it acted in good faith. For example, we do not believe Congress could have contemplated holding an employer liable for evading the ADEA when the employer made a good faith effort to implement a bona fide plan with no intention to evade the purposes of the ADEA, but its legal counsel or insurer erred or misrepresented[13] the true extent of the needed reductions and thereby reduced benefits beyond the level necessary to compensate for the increased cost of insuring older employees.

This "good faith" defense does not permit an employer to close its eyes or ignore actions by its insurer or legal counsel that it knows will result in the plan violating the ADEA. Nor does it relieve an employer of

its obligation to inquire into the lawfulness of the plan. It does, however, allow an employer to show that despite its good faith attempt to provide benefits in conformity with the ADEA, errors or misrepresentations by its insurer caused it to provide unlawfully low benefits to its older employees. Thus, an employer cannot satisfy its burden by merely producing a conclusory certification from its insurer that the benefit schedule is lawful. There must be cost data proving a correlation between age and cost, which allows an employer to assess the insurer's benefit schedule.

Therefore, we will remand for consideration whether Mt. Lebanon can reasonably justify its plan in view of the proper standard, which incorporates the cost-justification requirement and good faith principle set forth above. Unless the city explains its legitimate business purpose in this manner, either at the summary judgment stage or at trial, it cannot establish that it did not use the plan as a subterfuge to evade the anti-discriminatory purposes of the ADEA.

For these reasons, the judgment of the district court will be vacated and we will remand for proceedings consistent with this opinion.

HUTCHINSON, Circuit Judge, concurring.

I concur in the judgment of the Court but write separately to disassociate myself from any suggestion in the Court's opinion that the only means available to an employer, seeking to defend a discrimination charge against its benefit plan, is to demonstrate "cost justification" pursuant to 29 C.F.R. § 820.120(d)(1).[1] The regulations offer one defense to the employer. However, an employer who does not proffer data demonstrating "cost justification" may still be entitled to a jury's determination as to whether his benefits plan is a "subterfuge to evade the purposes of [the ADEA]." 29 U.S.C.A. § 623(f)(2) (West 1985). Accord-

---

**13.** In the case of errors of misrepresentations, the employer would be required to modify its plan to correct the mistake and compensate employees for any benefits lost as a result of the error or misrepresentation.

**1.** These cost justification regulations now appear at 29 C.F.R. § 1625.10 (1987). *See* Opinion of the Court, at n. 8.

ing to the Supreme Court in *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 203, 98 S.Ct. 444, 450, 54 L.Ed.2d 402 (1977), the term subterfuge in § 623(f)(2) means "a scheme, plan, stratagem, or artifice of evasion."

Unfortunately, the legislative history to the ADEA offers little insight into the limits of the § 623(f)(2) defense. Comment, *Interpreting Section 4(f)(2) of the ADEA: Does Anyone Have a "Plan"?,* 135 U.Pa.L. Rev. 1055, 1055 (1987). In *McMann,* the Supreme Court chose to apply the "ordinary" definition to the term subterfuge in § 623(f)(2). *McMann,* 434 U.S. at 203, 98 S.Ct. at 450. Subterfuge, according to the *McMann* Court, requires some showing of artifice. *Id.* To my mind, this examination calls for scrutiny of the employer's subjective intent. In other words, an employer may be able to invoke the § 623(f)(2) defense upon a showing that it sought, in good faith, to comply with the objectives of the ADEA. Since the statute contemplates such a good faith defense, I would allow Mt. Lebanon on remand the opportunity to elicit facts demonstrating its good faith. The Court's emphasis on the objective criterion of 29 C.F.R. § 820.120(d)(1) unduly restricts Mt. Lebanon's ability to defend the charge of discrimination.

It is the role of an administrative agency to execute legislative policy; neither agencies nor courts are free to rewrite acts of Congress. *Williamson Shaft Contracting Co. v. Phillips,* 794 F.2d 865, 869 (3d Cir. 1986). The Court's focus on cost considerations, pursuant to the regulations, connotes an emphasis on objective factors rather than the subjective analysis suggested in § 623(f)(2). While evidence demonstrating compliance with the objective factors is probative on the issue of the employer's good faith, the inquiry does not end there. In the absence of objective data, the employer should nevertheless be able to demonstrate its subjective good faith.

This approach is consistent with that of the Second Circuit. In *Cipriano v. Board of Education,* 785 F.2d 51, 58 (2d Cir.1986), the Court stated that the regulations:

seem to put a fairly heavy burden on the employer to justify any age-based distinctions in employee benefit plans on the basis of "age-related cost justifications." While we would not wish to be understood as endorsing every detail of the regulations, we cannot simply disregard them. All that we now decide is that even in the case of voluntary early retirement plans the employer ... must come up with some evidence that the plan is not a subterfuge to evade the purposes of the ADEA by showing a legitimate business reason for structuring the plan as it did.

Admittedly, the decision in *Cipriano* is limited to a voluntary early retirement plan. However, the Court's reluctance to afford the regulations the force of law is clear. *See also Potenze v. New York Shipping Ass'n,* 804 F.2d 235, 238 (2d Cir.1986) (both intent of employer and regulations relevant on subterfuge issue), *cert. denied,* — U.S. ——, 107 S.Ct. 1955, 95 L.Ed.2d 528 (1987); *Cook v. Pan American World Airways, Inc.,* 647 F.Supp. 816, 825 (S.D.N.Y.1986) (showing of legitimate business reason sufficient to show seniority system not subterfuge), *aff'd per curiam,* 817 F.2d 1030 (2d Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 259, 98 L.Ed.2d 217 (1987).

On the limited record there is conflicting evidence on the issue of whether Mt. Lebanon was acting in good faith when it sought to provide disability benefits to its employees. On remand, it should be given a chance, in the absence of objective data demonstrating "cost justification," to persuade a jury that it was acting in good faith when it sought the advice of its insurers and its counsel on how to comply with the ADEA. I believe the final determination as to whether Mt. Lebanon's MEIT plan is a subterfuge to avoid the objectives of the ADEA is more properly left to a local jury than a Washington regulator. Therefore, I would permit the District Court to submit to a jury the question of whether Mt. Lebanon adopted its varied benefit plans as a "scheme, plan, stratagem, or artifice of evasion" of the ADEA.